IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No.: |
| ISEMAN & ASSOCIATES, LLC, | |
| and | JURY TRIAL DEMANDED |
| VICKI L. ISEMAN, | |
| Defendants. | |

## COMPLAINT

The United States of America files its Complaint against Iseman & Associates, LLC and
Vicki L. Iseman and alleges as follows:

## INTRODUCTION

1.      The United States brings this action to recover treble damages and civil penalties
under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33; to recover penalties under the
Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a;
and to recover damages under the common law unjust enrichment and payment by mistake.

2.      This action arises from false statements, records, and claims Iseman & Associates
LLC ("Iseman & Associates") and its manager and sole member, Vicki Iseman, knowingly
presented to, or caused to be presented to, the United States and the United States Small Business
Administration ("SBA"), and lenders acting on the SBA's behalf, in violation of the FCA,
FIRREA, and common law.

1

## JURISDICTION AND VENUE

3.    This action arises under the FCA, 31 U.S.C. §§ 3729-3733, FIRREA, 12 U.S.C. § 1833a, and the common law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1367(a), 31 U.S.C. § 3732(a), and 12 U.S.C. § 1833a.

4.    Venue is proper in this Court under 31 U.S.C. § 3732(a), 28 U.S.C. 1391(b), and 28 U.S.C. § 1395(a), and Local Civil Rule 3(C), because Defendants transact business within, and the acts proscribed by 31 U.S.C. § 3729 and giving rise to the United States' claim under 12 U.S.C. § 1833a took place within, the Alexandria Division of the Eastern District of Virginia.

## PARTIES

5.    Plaintiff is the United States of America.

6.    Defendant Iseman & Associates is a Virginia limited liability company, with its principal place of business at 700 South Rosemary Avenue, West Palm Beach, Florida 33401.

7.    At all times relevant to this Complaint, Iseman & Associates was located at 1100 North Glebe Road, Suite 1010, Arlington, Virginia 22201.

8.    From approximately January 30, 2015, until approximately January 17, 2018, Iseman & Associates was known as Iseman & Szeliga LLC. On or about January 17, 2018, Iseman & Szeliga LLC filed a name change with the Virginia State Corporation Commission changing its named to Iseman & Associates.

9.    Defendant Vicki Iseman is the manager and sole member of Iseman & Associates and was a member of Iseman & Szeliga.

10.    Upon information and belief, Vicki Iseman currently resides at 700 South Rosemary Avenue, West Palm Beach, Florida 33401.

FACTS

I.    The CARES Act and Paycheck Protection Program

A.    CARES Act Background

11.    The SBA Section 7(a) Loan Guarantee Program authorizes the SBA to lend money to eligible businesses by having the SBA provide guarantees to participating lenders. Section 7(a) loans are the most basic and most frequently used loans within the SBA business loan program. In the event of default on the loan, SBA pays the lender the guaranty amount and receives a complete assignment of the loan.

12.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the CARES Act to modify its existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

13.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP"). The PPP loan program was specifically placed under the existing SBA 7(a) loan program and authorized the SBA to guarantee PPP loans "under the same terms, conditions, and processes" as other 7(a) loans. 15 U.S.C. § 636(a)(36)(B).

14.    Businesses that spent PPP loan proceeds on payroll costs and other eligible business expenses could apply and qualify for loan forgiveness up to the full amount of the loan.

15.    The SBA fully guaranteed each PPP loan and reimbursed the lender 100 percent of the loan if the borrower filed an application for forgiveness and the loan was forgiven by the

SBA, or if the borrower defaulted on the loan. In the event of forgiveness or default, the SBA

acquired the note following SBA's payment to the lender.

B.    The PPP Application and Forgiveness Process

16.    The CARES Act was intended to quickly provide relief to America's small

businesses and allowed SBA to delegate authority to lenders to process PPP loan applications.

17.    Consistent with Congress' intent for rapid action, SBA authorized hundreds of

new lenders to process PPP loan applications pursuant to a streamlined PPP loan-origination

process in which: (i) the usual Section 7(a) underwriting requirements were waived; (ii)

borrowers could self-certify their eligibility on their PPP loan applications; (iii) lenders could

rely (in good faith) on borrowers' self-certifications, documentation, and calculations; and (iv)

lenders could obtain SBA's guarantee for PPP loans by certifying to SBA that the borrower had

made the necessary certifications and had submitted the required documentation. *See* 85 Fed.

Reg. 20,811, 20,814–16 (2020).

18.    To obtain a PPP loan, a borrower had to qualify as an eligible small business and

was required to submit a PPP loan application. The application was signed by an authorized

representative of the borrower. The application required the borrower to acknowledge the

program rules and make affirmative certifications that it was eligible for a PPP loan. Once the

PPP loan application was approved, the financial institution funded and disbursed the loan.

19.    The borrower was required to use the PPP loan proceeds for certain permissible

expenses—payroll costs, interest on mortgages, rent, and utilities. If the borrower spent the loan

proceeds on these expense items within a designated period of time and used a minimum

percentage of those funds on payroll expenses, the interest and principal on the PPP loan could

be entirely forgiven.

20.     To obtain forgiveness of a PPP loan, the borrower was required to apply to its lender or directly to SBA depending on the size of the loan. As with the loan application, the borrower was again required to make affirmative certifications regarding its eligibility for forgiveness and its use of the PPP loan proceeds.

21.     Upon the lender's receipt of the loan forgiveness application, the lender would review the application and recommend the amount of loan forgiveness to SBA. Subject to SBA's review, SBA remitted the appropriate amount to the lender pursuant to SBA's guarantee of the loan.

C.     Businesses "Primarily Engaged" in "Lobbying Activities" are Ineligible for PPP Loans

22.     On April 15, 2020, the SBA promulgated an Interim Final Rule ("IFR") addressing implementation of the PPP loan program (the "April 2020 IFR"). *See* 85 Fed. Reg. 20,811 (2020). The April 2020 IFR supplemented previous regulations and guidance on several important, discrete issues.

23.     Among other items, the April 2020 IFR confirmed that the PPP loan program incorporated the long-standing restrictions on eligibility for 7(a) loans. In a section entitled "How do I determine if I am ineligible?," the April 2020 IFR stated that "Businesses that are not eligible for PPP loans are identified in 13 C.F.R. § 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible." 85 Fed. Reg. at 20,812.

24.     In turn, 13 C.F.R. § 120.110 identifies "types of businesses" that are categorically "ineligible for SBA business loans." This includes "[b]usinesses primarily engaged in political or lobbying activities." 13 C.F.R. § 120.110(r).

25.     Under the SBA Standard Operating Procedure in effect at the time, a business was "primarily engaged in political or lobbying activities" if the business "derives over 50% of its

5

gross annual revenue from political or lobbying activities." SBA, SOP 50 10 5(K), *Standard Operating Procedure for Lender and Development Company Loan Programs* (effective April 1, 2019); *see also* SBA, SOP 50 10 6, *Standard Operating Procedure for Lender and Development Company Loan Programs* (effective October 1, 2020) (same).

26. On December 27, 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act ("Economic Aid Act") (Pub. L. 116-260) became law. Under the Economic Aid Act, SBA was authorized to guarantee Second Draw PPP Loans to borrowers that previously received a PPP loan through March 31, 2021.

27. The Economic Aid Act specified that most entities, including businesses primarily engaged in lobbying activities, listed in 13 C.F.R. § 120.110 were not eligible for Second Draw PPP Loans. 15 U.S.C. § 636(a)(37)(A)(iv)(iii)(aa). The Economic Aid Act further emphasized that "any business concern or entity primarily engaged in political or lobbying activities, which shall include any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents" was also ineligible for a Second Draw PPP Loan. 15 U.S.C. § 636(a)(37)(A)(iv)(iii)(aa)-(bb).

28. On January 15, 2021, the SBA promulgated an IFR to implement the Economic Aid Act (the "January 2021 IFR"). 86 Fed. Reg. § 3,692 (2021). The January 2021 IFR explained, *inter alia*, that "Paragraphs (a), (g), and (k) of 13 C.F.R. § 120.110 do not apply to PPP loans. . . . Otherwise, a business is not eligible for a PPP loan if it is a type of business concern (or would be, if the entity were a business concern) described in 13 C.F.R. § 120.110, except as permitted by subsections B.1.d and B.1.g of this rule or otherwise permitted by PPP rules." *Id.* at 3,698.

29.     The Economic Aid Act also specified that no portion of any PPP loan could be used for "(I) lobbying activities, as defined in section 1602 of title 2; (II) lobbying expenditures related to a State or local election; or (III) expenditures designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before Congress or any State government, State legislature, or local legislature or legislative body." 15 U.S.C. § 636(a)(36)(F)(6). The January 2021 IFR confirmed that "None of the proceeds of a PPP loan may be used for (1) lobbying activities, as defined in section 3 of the Lobbying Disclosure Act of 1995 (2 U.S.C. 1602); (2) lobbying expenditures related to a State or local election; or (3) expenditures designed to influence the enactment of legislation, appropriations, regulation, administrative action, or Executive order proposed or pending before Congress or any State government, State legislature, or local legislature or legislative body." 86 Fed. Reg. at 3,705.

30.     On March 3, 2021, SBA published answers to Frequently Asked Questions which confirmed, *inter alia*, that SBA had incorporated the definition of "lobbying activities" from the Lobbying Disclosure Act of 1995 ("LDA"), 2 U.S.C. § 1602, for the purposes of determining eligibility for PPP loans. *See* Question No. 57, "Paycheck Protection Program Loans Frequently Asked Questions," *available at* https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.

31.     Under the LDA, "lobbying activities" are defined as "lobbying contacts and efforts in support of such contacts, including preparation and planning activities, research and other background work that is intended, at the time it is performed, for use in contacts, and coordination with the lobbying activities of others." 2 U.S.C. § 1602(7).

## II.    The False Claims Act

32.    The FCA prohibits fraudulent conduct in connection with federal programs,

including the knowing submission of false claims for payment to the government.

*See* 31 U.S.C. § 3729(a)(1)(A).

33.    31 U.S.C. §§ 3729(a)(1)(A) and (B) of the FCA provide that:

(1)    . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government.

31 U.S.C. § 3729(a)(1)(A), (B), and (G).

34.    As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i)  is presented to an officer, employee, or agent of the United States; or

(ii)   is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the Government—

(I)    provides or has provided any portion of the money or property requested or demanded; or

(II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2).

35. A person who violates the FCA "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). *See* 28 C.F.R. § 85.3(a)(9); *Civil Monetary Penalties Inflation Adjustments for 2024*, 89 Fed. Reg. 9,764 (Feb. 12, 2024).

### III.    FIRREA

36. FIRREA authorizes civil enforcement of enumerated criminal predicate offenses—as established by a preponderance of the evidence—that involve financial institutions and certain government agencies. *See* 12 U.S.C. § 1833a(e).

37. There are two enumerated predicate offences that form the basis of liability under FIRREA in this Complaint. First, 15 U.S.C. § 645(a) prohibits any person from "mak[ing] any statement knowing it to be false . . . for the purpose of obtaining for himself or for any applicant any loan, or extension thereof by renewal, deferment of action, or otherwise, or the acceptance, release, or substitution of security therefor, or for the purpose of influencing in any way the action of the [SBA]." Second, 18 U.S.C. § 1344 prohibits any person from "knowingly execut[ing], or attempt[ing] to execute, a scheme or artifice to (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."

38. FIRREA provides that the United States may recover "a civil penalty in an amount assessed by the court in a civil action" for each violation of 15 U.S.C. § 645(a) or 18 U.S.C. § 1344. 12 U.S.C. § 1833a(a).

39. The maximum penalty is specified by law and generally may not exceed $1,000,000 per violation. 12 U.S.C. § 1833a(b)(1)-(2); 28 C.F.R. § 85.3(a)(6), (7). FIRREA

provides that the penalty can exceed that cap in certain instances, allowing the United States to recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or loss. 12 U.S.C. § 1833a(b)(3)

IV.    Iseman & Associates was not Eligible to Apply for or Receive any PPP Loans

40.    At all times between 2019 and 2022, Iseman & Associates, while located in Arlington, Virginia, was primarily engaged in lobbying activities.

41.    For Tax Years 2019 through 2022, Vicki Iseman reported the profit or loss from Iseman & Associates to the Internal Revenue Service on Schedule C of her personal tax return. For each of those years, Iseman signed her tax return, declaring that "I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

42.    With the exception discussed below, *infra* ¶¶ 77–78, on each Schedule C that Vicki Iseman filed with the Internal Revenue Service ("IRS") for Tax Years 2019 through 2022, Vicki Iseman identified the "principal business or profession" of Iseman & Associates as "LOBBYING."

43.    Pursuant to the LDA, a lobbyist is required to register with Congress each client on behalf of whom it acts as a lobbyist. 2 U.S.C. § 1603(a). Such reports are submitted to the Secretary of the Senate and Clerk of the House of Representatives.

44.    Between 2019 and 2022, Iseman & Associates registered as a lobbyist with respect to every client for whom it provided any professional services.

45.    In addition, the LDA requires a lobbyist to file a quarterly report with Congress for each client for whom it provided lobbying services. 2 U.S.C. § 1604(a). The quarterly report must contain, *inter alia*, "a list of the specific issues upon which a lobbyist employed by the

registrant engaged in lobbying activities;" "a statement of the Houses of Congress and the Federal agencies contacted by lobbyists employed by the registrant on behalf of the client;" "a list of the employees of the registrant who acted as lobbyists on behalf of the client;" and "a good faith estimate of the total amount of all income from the client (including any payments to the registrant by any other person for lobbying activities on behalf of the client) during the quarterly period, other than income for matters that are unrelated to lobbying activities." 2 U.S.C. § 1604(b).

46.    Each LDA report filed by Iseman & Associates between 2019 and 2022 was signed by Vicki Iseman.

47.    For each year, between 2019 and 2022, Iseman & Associates reported all or nearly all of its annual gross revenue as derived from "lobbying activities" on its required quarterly reports to Congress.

48.    The following table shows Iseman & Associates' revenue derived from lobbying, as reported to Congress, and its annual gross revenue, as reported to the IRS, from 2019 to 2022:

| Year | Lobbying Revenue (as reported to Congress) | Gross Revenue (as reported to the IRS) |
|------|--------------------------------------------|----------------------------------------|
| 2019 | $728,000.00 | $639,151.00 |
| 2020 | $607,250.00 | $614,221.00 |
| 2021 | $188,000.00 | $248,250.00 |
| 2022 | $192,000.00 | $199,000.00 |

49.    Because Iseman & Associates was a business primarily engaged in lobbying activities, it was categorically ineligible for any SBA 7(a) loan, including a PPP loan.

V.    Defendant's Application for and Receipt of PPP Loans

50.    In the fall of 2020, Vicki Iseman instructed Iseman & Associates staff to research PPP loans and forgiveness.

51.    As early as September 23, 2020, Iseman & Associates staff informed Vicki Iseman that Iseman & Associates was not eligible for a PPP loan because it was a "lobbying firm." Specifically, they informed Vicki Iseman that a business was not eligible for a PPP loan if more than 50 percent of its business was lobbying.

A.    <u>Defendants' First Application to Bank of America for a PPP Loan</u>

52.    On or about January 20, 2021, Iseman & Associates (using its prior name Iseman & Szeliga) applied for a PPP Loan from Bank of America N.A., a "financial institution" as defined in 18 U.S.C. § 20, ("Bank of America"), requesting $55,687 (the "First Application"). The First Application was assigned reference number ending -1854.

53.    The First Application was signed by Vicki Iseman.

54.    In signing the First Application, Vicki Iseman, on behalf of Iseman & Associates, affirmatively certified, *inter alia*, that: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the [SBA] and the Department of the Treasury implementing the Paycheck Protection Program. . ."

55.    Vicki Iseman further certified that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

56.    Vicki Iseman certified that her signature represented that she was the "Authorized Representative of the Applicant" and that "the Applicant remains eligible to receive a loan under the" PPP.

57.     Along with the First Application, Vicki Iseman, on behalf of Iseman & Associates, submitted various supporting documents, including a copy of her filed 2019 IRS Schedule C, which accurately identified the "principal business or profession" of Iseman & Associates as "LOBBYING."

58.     Between February 1, 2021, and February 10, 2021, Vicki Iseman had repeated calls with Bank of America regarding the status of the First Application.

59.     Bank of America took no action on the First Application.

60.     On or about February 17, 2021, Vicki Iseman, on behalf of Iseman & Associates, withdrew the First Application.

B.      Defendants' Second Application to Bank of America for a PPP Loan

61.     Vicki Iseman became convinced that the First Application was not approved because Iseman & Associates' "principal business" was identified as "LOBBYING" on the 2019 IRS Schedule C that she had submitted as part of the application.

62.     Accordingly, Vicki Iseman, or another individual acting at Iseman's direction and on behalf of Iseman and Iseman & Associates, created an altered 2019 IRS Schedule C that replaced the term "LOBBYING" with "PUBLIC AFFAIRS" as Iseman & Associates' "primary business."

63.     On or about February 18, 2021, Iseman & Associates (using its prior name Iseman & Szeliga) submitted an application for a PPP Loan to Bank of America, requesting $51,205 (the "Second Application"). The Second Application was assigned loan reference number ending -3401.

64.     The Second Application was signed by Vicki Iseman.

65.     In signing the Second Application, Vicki Iseman, on behalf of Iseman & Associates, affirmatively certified, *inter alia*, that: "The Applicant is eligible to receive a loan

13

under the rules in effect at the time this application is submitted that have been issued by the

[SBA] and the Department of the Treasury implementing the Paycheck Protection Program. . ."

66.     Vicki Iseman further certified that "the information provided in this application

and the information provided in all supporting documents and forms is true and accurate in all

material respects."

67.     Vicki Iseman certified that her signature represented that she was the "Authorized

Representative of the Applicant" and that "the Applicant remains eligible to receive a loan under

the" PPP.

68.     These certifications were false, because Iseman & Associates was not eligible to

receive a PPP loan, because it was "primarily engaged" in "lobbying activities."

69.     Vicki Iseman knew that these certifications were false, because she knew that

Iseman & Associates was ineligible to obtain a PPP loan because it was "primarily engaged" in

"lobbying activities."

70.     Vicki Iseman knew that these false certifications were material, because she knew

that the lender would rely on the applicant's certifications to determine eligibility for a PPP loan,

according to the directions on the PPP application.

71.     These false certifications were made with the intent to influence SBA and Bank of

America to issue a PPP loan to Iseman & Associates for which it was not eligible

72.     Along with the Second Application, Vicki Iseman, on behalf of Iseman &

Associates, submitted various supporting documents. With the Second Application, Iseman

included the unfiled altered version of her 2019 IRS Schedule C, which had been altered to

indicate that Iseman & Associates' "primary business" was "PUBLIC AFFAIRS."

73.     The altered IRS Schedule C was submitted with the intent to influence SBA and Bank of America to issue a PPP loan to Iseman & Associates for which it was not eligible.

74.     Vicki Iseman knew that the altered Schedule C was material to the issuance of the PPP loan because the lender used the Schedule C, in part, to confirm eligibility for a PPP loan.

75.     On or about February 24, 2021, Bank of America approved the Second Application and Iseman & Associates received its first draw loan for $51,205 from Bank of America (the "First Draw Loan").

76.     SBA paid $2,560.25 in processing fees in connection with the application and approval of the First Draw Loan.

77.     On or about February 26, 2021, Vicki Iseman instructed her accountant to file an amended 2019 IRS tax return, changing only the "primary business" for Iseman & Associates on the Schedule C.

78.     On or about March 15, 2021, an amended 2019 tax return was filed on behalf of Vicki Iseman.

79.     As noted above, *supra* ¶ 42, this amended return was the only state or federal tax return between 2019 and 2022 that did not identify Iseman & Associates' "primary business" as "LOBBYING."

C.     Defendant's Third Application to Bank of America for a PPP Loan

80.     On or about April 23, 2021, Iseman & Associates (using its prior name Iseman & Szeliga) applied for a Second Draw PPP Loan from Bank of America, requesting $51,200 (the "Third Application"). The Third Application was assigned loan reference number ending -2654.

81.      The Third Application was signed by Vicki Iseman.

82.     In signing the Third Application, Vicki Iseman, on behalf of Iseman & Associates, affirmatively certified, *inter alia*, that: "The Applicant is eligible to receive a loan

15

under the rules in effect at the time this application is submitted that have been issued by the

[SBA] and the Department of the Treasury implementing the Paycheck Protection Program. . ."

83.     The Third Application required an express certification that the applicant was not

"primarily engaged in political or lobbying activities," to which Vicki Iseman certified:

| The Applicant is not a business concern or entity primarily engaged in political or lobbying activities, including any entity that is organized for research or for engaging in advocacy in areas such as public policy or political strategy or otherwise describes itself as a think tank in any public documents. | Yes |
|---|---|

84.     Vicki Iseman further certified that "the information provided in this application

and the information provided in all supporting documents and forms is true and accurate in all

material respects."

85.     These certifications were false because Iseman & Associates was not eligible to

receive a PPP loan, because it was "primarily engaged" in "lobbying activities."

86.     Vicki Iseman knew that these certifications were false, because she knew that

Iseman & Associates was ineligible to obtain a PPP loan because it was "primarily engaged" in

"lobbying activities."

87.     Vicki Iseman knew that these false certifications were material, because she knew

that the lender would rely on the applicant's certifications to determine eligibility for a PPP loan.

88.     These false certifications were made with the intent to influence SBA and Bank of

America to issue a PPP loan to Iseman & Associates for which it was not eligible

89.     On or about April 26, 2021, Bank of America approved the second draw PPP loan

application and Iseman & Associates received $51,200 in PPP funds from Bank of America (the

"Second Draw Loan").

90.     SBA paid $2,560 in processing fees in connection with the application and

approval of the Second Draw Loan.

VI.    Defendants' Fraudulent Forgiveness Applications

A.  Defendants' First Loan Forgiveness Application

91.    On or about September 14, 2021, Iseman & Associates (using its prior name Iseman & Szeliga) submitted a forgiveness application to Bank of America for the First Draw Loan (the "First Forgiveness Application").

92.    The First Forgiveness Application was signed by Vicki Iseman.

93.    In signing the First Forgiveness Application, Vicki Iseman, on behalf of Iseman & Associates, affirmatively certified that Iseman & Associates had "complied with all requirements in the [PPP] Program Rules."

94.    These certifications were false, because Iseman & Associates was not eligible to receive a PPP loan, because it was "primarily engaged" in "lobbying activities."

95.    These certifications were also false because Iseman & Associates used PPP funds to pay employees engaged in "lobbying activities," which was a prohibited use of PPP loan proceeds.

96.    Vicki Iseman knew that these certifications were false, because she knew that Iseman & Associates was ineligible to obtain a PPP loan because it was "primarily engaged" in "lobbying activities."

97.    Vicki Iseman knew that these false certifications were material, because she knew that SBA and the lender would rely on the applicant's certifications to determine whether to forgive the PPP loan.

98.    These false certifications were made with the intent to influence SBA and Bank of America to forgive a PPP loan to Iseman & Associates that it had not been eligible to receive.

99.     Based on the false certifications in the First Forgiveness Application, SBA forgave the First Draw Loan and paid Bank of America $51,498.20 (consisting of $51,205 in principal and $293.20 in interest).

100.    If SBA had known that the certifications on the First Forgiveness Application were false, it would not have forgiven the loan.

B.    <u>Defendants' Second Loan Forgiveness Application</u>

101.    On or about February 9, 2022, Iseman & Associates (using its prior name Iseman & Szeliga) submitted a forgiveness application to Bank of America for the Second Draw Loan (the "Second Forgiveness Application").

102.    The Second Forgiveness Application was signed by Vicki Iseman.

103.    In signing the Second Forgiveness Application, Vicki Iseman, on behalf of Iseman & Associates, affirmatively certified that Iseman & Associates had "complied with all requirements in the [PPP] Program Rules."

104.    These certifications were false, because Iseman & Associates was not eligible to receive a PPP loan, because it is a business that was "primarily engaged" in "lobbying activities."

105.    These certifications were also false because Iseman & Associates used the PPP funds to pay employees engaged in "lobbying activities," which was a prohibited use of PPP loan proceeds.

106.    Vicki Iseman knew that these certifications were false, because she knew that Iseman & Associates was ineligible to obtain a PPP loan because it was "primarily engaged" in "lobbying activities."

107.    Vicki Iseman knew that these false certifications were material, because she knew that SBA and the lender would rely on the applicant's certifications to determine whether to forgive the PPP loan.

108.    These false certifications were made with the intent to influence SBA and Bank of America to forgive a PPP loan to Iseman & Associates that it had not been eligible to receive.

109.    Based on the false certifications in the Second Forgiveness Application, SBA forgave the Second Draw Loan and paid Bank of America $51,625.03 (consisting of $51,200 in principal and $425.03 in interest).

110.    If SBA had known that the certifications on the Second Forgiveness Application were false it would not have forgiven the loan.

## CAUSES OF ACTION

### COUNT I
### False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))
### (Iseman & Associates)

111.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

112.    Defendant Iseman & Associates knowingly presented or caused to be presented four false or fraudulent claims for payment involving two fraudulent PPP applications and two fraudulent applications for loan forgiveness, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

113.    Defendant Iseman & Associates, through its false or fraudulent claims for PPP loans and the forgiveness thereof, caused the Government to pay a total of $5,120.25 in processing fees and $103.123.23 in loan forgiveness (consisting of $102,405 in principal and $718.23 in interest).

114.    Because of Defendant Iseman & Associates' acts, the United States sustained damages and, therefore, is entitled to treble damages under the False Claims Act, as well as civil penalties of $13,946 to $27,894 for each violation.

## COUNT II
### False Records or Statements Material to False Claims (31 U.S.C. § 3729(a)(1)(B))
### (Iseman & Associates)

115.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

116.    Defendant Iseman & Associates knowingly made and used false records and/or false statements and certifications material to false and fraudulent claims to obtain two PPP loans, and the forgiveness of those loans, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

117.    Defendant Iseman & Associates, through its use of false records and/or statements to obtain PPP loans, caused the Government to pay a total of $5,120.25 in processing fees and $103.123.23 in loan forgiveness (consisting of $102,405 in principal and $718.23 in interest).

118.    Because of Defendant Iseman & Associates acts, the United States sustained damages and, therefore, is entitled to treble damages under the False Claims Act, as well as civil penalties of $13,946 to $27,894 for each violation.

## COUNT III
### False Statements (15 U.S.C. § 645)
### (Iseman & Associates)

119.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

120.    Defendant Iseman & Associates for the purposes of fraudulently obtaining two federally guaranteed PPP loans and unlawfully inducing the SBA to forgive the PPP loans

unlawfully, willfully, and knowingly made false statements and/or certifications to SBA lenders and to the SBA.

121.    Specifically, Defendant Iseman & Associates unlawfully, willfully, submitted fake federal tax return forms and false certifications for the purpose of influencing the SBA and/or obtaining PPP loan proceeds, in violation of 15 U.S.C. § 645(a), which is a predicate violation of FIRREA, 12 U.S.C. § 1833a.

122.    Because of Defendant Iseman & Associates' actions, it is liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a.

COUNT IV
Bank Fraud (18 U.S.C. § 1344)
(Iseman & Associates)

123.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

124.    Defendant Iseman & Associates knowingly executed a scheme or artifice for the purposes of fraudulently obtaining money owned or under the custody or control of a financial institution (*viz.,* Bank of America), by means of false or fraudulent pretenses, representations, or promises.

125.    Specifically, Defendant Iseman & Associates unlawfully, willfully, submitted fake federal tax return forms and made false statements and certifications to Bank of America for the purpose of obtaining PPP loan proceeds from Bank of America, in violation of 18 U.S.C. § 1344, which is a predicate violation of FIRREA, 12 U.S.C. § 1833a.

126.    Because of Defendant Iseman & Associates' actions, it is liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a.

COUNT V
False or Fraudulent Claims (31 U.S.C. § 3729(a)(1)(A))
(Vicki Iseman)

127.     The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

128.     Defendant Vicki Iseman knowingly presented or caused to be presented four false or fraudulent claims for payment involving two fraudulent PPP applications and two fraudulent applications for loan forgiveness, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

129.     Defendant Vicki Iseman, through her false or fraudulent claims for PPP loans and the forgiveness thereof, caused the Government to pay a total of $5,120.25 in processing fees and $103,123.23 in loan forgiveness (consisting of $102,405 in principal and $718.23 in interest).

130.     Because of Defendant Vicki Iseman's acts, the United States sustained damages and, therefore, is entitled to treble damages under the False Claims Act, as well as civil penalties of $13,946 to $27,894 for each violation.

COUNT VI
False Records or Statements Material to False Claims (31 U.S.C. § 3729(a)(1)(B))
(Vicki Iseman)

131.     The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

132.     Defendant Vicki Iseman knowingly made and used false records and/or false statements and certifications material to false and fraudulent claims to obtain two PPP loans, and the forgiveness of those loans, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

133.     Defendant Vicki Iseman, through her use of false records and/or statements to obtain PPP loans, caused the Government to pay a total of $5,120.25 in processing fees and $103,123.23 in loan forgiveness (consisting of $102,405 in principal and $718.23 in interest).

22

134.    Because of Defendant Vicki Iseman's acts, the United States sustained damages and, therefore, is entitled to treble damages under the False Claims Act, as well as civil penalties of $13,946 to $27,894 for each violation.

COUNT VII
False Statements (15 U.S.C. § 645)
(Vicki Iseman)

135.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

136.    Defendant Vicki Iseman, for the purposes of fraudulently obtaining two federally guaranteed PPP loans and unlawfully inducing the SBA to forgive the PPP loans unlawfully, willfully, and knowingly made false statements and/or certifications to SBA lenders and to the SBA.

137.    Specifically, Defendant Vicki Iseman unlawfully, willfully, submitted fake federal tax return forms and false certifications for the purpose of influencing the SBA and/or obtaining PPP loan proceeds, in violation of 15 U.S.C. § 645(a), which is a predicate violation of FIRREA, 12 U.S.C. § 1833a.

138.    Because of Defendant Vicki Iseman's actions, she is liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a.

COUNT VIII
Bank Fraud (18 U.S.C. § 1344)
(Vicki Iseman)

139.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

140.    Defendant Vicki Iseman knowingly executed a scheme or artifice for the purposes of fraudulently obtaining money owned or under the custody or control of a financial institution (*viz.,* Bank of America), by means of false or fraudulent pretenses, representations, or promises.

141.    Specifically, Defendant Vicki Iseman unlawfully, willfully, submitted fake federal tax return forms and made false statements and certifications to Bank of America for the purpose of obtaining PPP loan proceeds from Bank of America, in violation of 18 U.S.C. § 1344, which is a predicate violation of FIRREA, 12 U.S.C. § 1833a.

142.    Because of Defendant Vicki Iseman's actions, she is liable for civil penalties up to the maximum amount authorized under 12 U.S.C. § 1833a.

COUNT IX
Unjust Enrichment
(Iseman & Associates)

143.    In the alternative, the United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

144.    By reason of the foregoing conduct and violation of federal law, Defendant Iseman & Associates was unjustly enriched and is liable to account for and pay such amounts, which are to be determined at trial, to the United States.

COUNT X
Payment by Mistake
(Iseman & Associates)

145.    The United States re-alleges and incorporates Paragraphs 1 through 110 of this Complaint.

146.    By reason of the foregoing conduct of the Defendant Iseman & Associates, lenders acting on behalf of the SBA and the United States made payments under mistake of fact.

147.    As a result of these payments made by lenders acting on behalf of the SBA and the United States under mistake of fact, the United States has sustained damages in an amount to be proven at trial.

PRAYER FOR RELIEF

WHEREFORE, the United States prays that judgment in its favor and against Defendants as follows:

A. Under Counts I & II (FCA), against Defendant Iseman & Associates, jointly and severally with Defendant Vicki Iseman, for treble the amount of the United States' single damages to be proven at trial, plus civil penalties for each and every false claim as required by law, costs, and expenses, together with all such further relief as may be just and proper;

B. Under Counts III & IV (FIRREA), against Defendant Iseman & Associates, jointly and severally with Defendant Vicki Iseman, for civil penalties pursuant to 12 U.S.C. § 1833a up to the maximum allowed by law per violation, or the amount of gain to Defendant, or, if greater, the amount of loss to SBA stemming from such conduct, costs, and expenses, together with all such further relief as may be just and proper;

C. Under Counts V & VI (FCA), against Defendant Vicki Iseman, jointly and severally with Defendant Iseman & Associates, for treble the amount of the United States' single damages to be proven at trial, plus civil penalties for each and every false claim as required by law, costs, and expenses, together with all such further relief as may be just and proper;

D. Under Counts VII & VIII (FIRREA), against Defendant Vicki Iseman, jointly and severally with Defendant Iseman & Associates, for civil penalties pursuant to 12 U.S.C. § 1833a up to the maximum allowed by law per violation, or the amount of gain to Defendant, or, if greater, the amount of loss to SBA stemming from such conduct, costs, and expenses, together with all such further relief as may be just and proper;

E.   Alternatively, under Count VIII (Unjust Enrichment), against Defendant Iseman & Associates, for the amount by which Defendant was unjustly enriched, costs, and expenses, and all such further relief as may be just and proper;

F.   Alternatively, under Count IX (Payment by Mistake), against Defendant Iseman & Associates, for the amount lenders acting on behalf of the SBA and the United States paid to the Defendant, costs, and expenses, and all such further relief as may be just and proper;

G.   Such other relief as this Court may deem just and proper,

JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), the United States demands a trial by jury of all issues properly triable to a jury in this case.


Dated: March 12, 2025

    Respectfully submitted,

    ERIK S. SIEBERT
    United States Attorney

By:    */s/ John E. Beerbower*
    JOHN E. BEERBOWER
    Assistant United States Attorney
    United States Attorney's Office
    *Counsel for the United States of America*
    2100 Jamieson Avenue
    Alexandria, VA 22314
    Tel: 703.299.3841
    Fax: 703.299.3898
    john.beerbower@usdoj.gov